UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WESLEY NEAL, II,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN, *et al.*,<br><br>Defendants. | Case No. 25-cv-12039<br>Honorable Linda V. Parker<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
NENROD'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
(ECF NO. 30)**

## I.      Introduction

Plaintiff Wesley Neal, II, a pro se prisoner of the Michigan Department of Corrections (MDOC), brings this action under 42 U.S.C. § 1983 alleging constitutional violations arising from his incarceration at the Macomb Correctional Facility.  ECF No. 1.  The Honorable Linda V. Parker referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 17.  Defendant Ebony Nenrod moves to dismiss or for summary judgment.  ECF No. 30.  The Court **RECOMMENDS** that Nenrod's motion be **GRANTED**.

## II.    Background

The facts alleged in Neal's complaint are taken as true to resolve Nenrod's motion to dismiss.  Defendant Dr. Allen, a dentist, denied Neal adequate dental treatment in February 2022 and July 2023.  ECF No. 1, PageID.4-5.  When Neal filed a grievance against Allen, Nenrod, a grievance coordinator, mishandled it by changing the identifying number on his grievance appeal.  *Id.*, PageID.5.  Nenrod also improperly rejected another grievance and delayed response deadlines for six other grievances.  *Id.*, PageID.10-11.  Neal claims that Nenrod violated his First, Eighth, and Fourteenth Amendment rights by manipulating and obstructing the grievance process in retaliation for previous grievances he filed against her and her coworkers.  *Id.*, PageID.9-11.

Neal also brought claims against eight other defendants.  *Id.*  Finding that Neal misjoined those claims, the Court recommended dismissing all but those against Allen for failure to adequately treat Neal's dental conditions and against Nenrod for interference with Neal's grievances.  ECF No. 27.  Judge Parker adopted that recommendation.  ECF No. 34.

Nenrod now moves to dismiss for failure to state a claim and for summary judgment on exhaustion grounds.

2

### III.    Analysis

#### *Motion for Summary Judgment*

#### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To meet this requirement, an inmate must strictly comply with the grievance process provided by the prison.  *Woodford*, 548 U.S. at 93-94.  But an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then § 1997e will not act as a barrier to suit.  *Ross v. Blake*, 578 U.S. 632, 643 (2016).

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  "But a prisoner countering a motion alleging failure to exhaust must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Parks v. Mich. Dep't of Corr.*, No. 2:20-cv-11673, 2021 WL 3533422, at *3 (E.D. Mich.

4

May 17, 2021), *adopted*, 2021 WL 2820984 (E.D. Mich. July 7, 2021)

(cleaned up).  Summary judgment based on failure to exhaust

administrative remedies is not on the merits and thus requires dismissal

without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

**B.**

MDOC Policy Directive (PD) 03.02.130 has a three-step procedure

that prisoners must follow to complete the administrative review process

and properly exhaust grievances.  ECF No. 30-2; ECF No. 30-3.[1]  The

policy requires a prisoner to try to informally resolve the problem with the

allegedly offending staff within two days of learning about the grievable

issue, and then, within five days of those informal efforts, file with the

grievance coordinator a Step I grievance about any unresolved issues.

ECF No. 30-2, PageID.356-357, ¶¶ Q, W.  The prisoner may then file a

Step II grievance appeal within ten business days of receiving the Step I

response or, if no response was received, within ten business days after

the date the response was due.  *Id.*, PageID.358, ¶ DD.  The same

---

[1] Nenrod's alleged misconduct took place from December 2022 through December 2023.  ECF No. 1, PageID.5, 9-11.  Two versions of PD 03.02.130 span this period, with the first effective March 18, 2019, and the second effective September 25, 2023.  ECF No. 30-2; ECF No. 30-3. Because the relevant grievance procedures are the same in both versions, the Court cites only the earlier policy.

schedule applies to a Step III appeal—it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due.  *Id.*, PageID.359, ¶ HH.  Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before suing.

Nenrod submits a Step III grievance report showing that Neal pursued two grievances through Step III about her alleged interference with his grievances: (1) MRF-23-07-1428-27z and (2) MRF-23-07-1429-28f/11f. ECF No. 30, PageID.327-330; ECF No. 30-4, PageID.396-400, 405-414. The Court addresses each grievance in turn.

MRF-1428 alleged that Nenrod delayed assigning grievance numbers and response deadlines for one grievance submitted on July 14, 2023, and two grievances submitted on July 17, 2023.  ECF No. 30-4, PageID.412.[2]

---

[2] MRF-1428 was rejected on procedural grounds at Step I for raising a non-grievable issue.  ECF No. 30-4, PageID.413.  But as the Step I response acknowledges, Neal was allowed to grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant, including alleged violations of [PD 03.02.130] and related procedures."  ECF No. 30-2, PageID.353, ¶ F; *see also* ECF No. 30-4, PageID.413.  No other procedural grounds justifying rejection were cited. Instead, the Step I response concluded that no policy violation occurred, thereby denying the grievance on the merits.  ECF No. 30-4, PageID.412-413.  Neal submitted a Step II appeal, and the MDOC acknowledged receipt.  *Id.*, PageID.411, 414.  Neal then submitted a Step III appeal

Nenrod contends that MRF-1428 does not exhaust Neal's claims because the three grievances referenced do not correspond with any grievances disputed in the complaint.  ECF No. 30, PageID.348.  She is incorrect.

The complaint alleges that Nenrod mishandled eight grievances.[3]  Of those eight, Neal submitted two in July 2023: MRF-1375 (submitted on July 14, 2023) and MRF-1383 (submitted on July 17, 2023), corresponding with the dates referenced in MRF-1428.  ECF No. 30-4, PageID.403, 419.  But the complaint alleges that Nenrod *changed* the grievance number on the Step III appeal for MRF-1375, while MRF-1428 alleged that she delayed *assigning* a grievance number and response deadline for MRF-1375 at Step I.  *Id.,* PageID.412; ECF No. 1, PageID.5.  MRF-1428 thus does not

---

claiming that he received no Step II response by the deadline.  *Id.,* PageID.411.  His Step III appeal was rejected because it was missing a Step II response.  *Id.,* PageID.410.  But a Step III appeal may be submitted within ten business days after the date the response was due even if no Step II response was received.  ECF No. 30-2, PageID.359, ¶ HH.

Nenrod does not argue that MRF-1428 was procedurally deficient at any step.  ECF No. 30.  Nor does the record reveal any procedural errors on Neal's part.  Thus, the Court declines to find that MRF-1428 could not exhaust any claims because of procedural errors.  *See McCloy v. Corr. Med. Servs.,* 794 F. Supp. 2d 743, 750 (E.D. Mich. 2011).

[3] Those grievances are: (1) MRF-23-07-1375-12a; (2) MRF-23-01-0030-12z; (3) MRF-23-01-0031-12z; (4) MRF-22-12-2730-12f; (5) MRF-23-05-0879-12z; (6) MRF-23-05-0880-12z; (7) MRF-23-07-1428-27z; and (8) MRF-23-07-1383-12z.  ECF No. 1, PageID.5-7, 10-11.

exhaust Neal's claim about the alleged mishandling of MRF-1375.  *See Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The issues [a plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

The complaint alleges that Nenrod delayed assigning MRF-1383 a response deadline, which aligns with Neal's grievance in MRF-1428.  ECF No. 1, PageID.11; ECF No. 30-4, PageID.412.  Nenrod contends that MRF-1428 still cannot exhaust Neal's claims because it did not assert a constitutional violation or retaliation.  ECF No. 30, PageID.347.  A grievance need not "allege a specific legal theory or facts that correspond to all the required elements" of an asserted claim but must only give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim."  *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003); *see also Dorsey v. Audu*, No. 24-10519, 2025 WL 3029565, at *4 (E.D. Mich. Sept. 9, 2025), *adopted*, 2025 WL 3027229 (E.D. Mich. Oct. 29, 2025).  And although "the term 'retaliation' need not be in a grievance to properly exhaust a claim for retaliation…some retaliatory motive must be suggested in the grievance to sufficiently place prison

8

officials on notice that the prisoner is asserting a retaliation claim." *Dykes v. Fuller*, No. 18-11528, 2019 WL 6170868, at *3 (E.D. Mich. Aug. 7, 2019).

MRF-1428 asserts that Nenrod delayed processing his grievances in "an abuse of authority and violation of Policy Directive 03.02.130." ECF No. 30-4, PageID.412. But the grievance offered no hint that Nenrod acted with a retaliatory motive. *Id.* Thus, Neal exhausted his claims stemming from Nenrod's alleged mishandling of MRF-1383 but did not exhaust a retaliation claim on that ground.

MRF-1429 disputes the response deadline Nenrod assigned for MRF-23-07-1322-12i. ECF No. 30-4, PageID.398. MRF-1322 is not one of the grievances the complaint alleges that Nenrod mishandled. *See generally* ECF No. 1. MRF-1429 thus exhausted no claims against Nenrod.

Neal contends that he did not need to name Nenrod in his grievances to exhaust his claims against her. ECF No. 35, PageID.489-490 (citing *Claybron v. DeAngelo*, No. 2:21-cv-11953, 2022 WL 19518408, at *8-9 (E.D. Mich. Dec. 9, 2022), *adopted* 2023 WL 2572456 (E.D. Mich. Mar. 20, 2023)). PD 03.02.130(S) requires a prisoner to name each person being grieved. *Sullivan v. Kosaraju*, 316 F. App'x 469, 470 (6th Cir. 2009); *see also* ECF No. 30-2, PageID.356, ¶ S. Courts have held that "fair notice" is

9

the key to satisfying this procedural requirement.  *Savoie v. Oliver*, 731 F. Supp. 3d 862, 872 (E.D. Mich. 2024).  *Claybron* acknowledged that some courts have held that a grievance naming one MDOC official may exhaust claims against other officials who were not named in the grievance.  2022 WL 19518408, at *9.  But *Claybron* concluded that more recent Sixth Circuit authority holds that a grievance naming some MDOC officials does not exhaust claims against unnamed officials unless the failure to include the unnamed officials was apparent.  *Id.* (citing *Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017)).  Thus, "a grievance that does not identify a prison official by name must at least include other information identifying the official, such as the official's title or position or even the facts set forth in the grievance."  *Savoie*, 731 F. Supp. 3d at 872 (cleaned up).

Neal does not identify any grievance that did not name Nenrod but that still exhausted the claims against her.  The only two grievances about alleged mishandling of grievances were MRF-1428 and MRF-1429.  *See* ECF No. 30, PageID.327-330; ECF No. 30-4.  Neal's argument thus lacks merit.

Neal also argues that he did not need to exhaust his claims because Nenrod rendered the grievance process unavailable by rejecting his grievances and by giving other MDOC officials more time to respond to

10

grievances.  ECF No. 35, PageID.498-499; ECF No. 36, PageID.525-527.

"[I]f a prisoner cannot make use of the prison grievance process—if

administrative remedies are unavailable—[he] is excused from the

exhaustion requirement."  *Bailey v. Washington*, 784 F. Supp. 3d 997, 1006

(E.D. Mich. 2025).  For Neal to be excused from the exhaustion

requirement, he must show that he made "affirmative efforts to comply with

the administrative procedures" that were "sufficient under the

circumstances."  *Lamb v. Kendrick*, 52 F.4th 286, 292-93 (6th Cir. 2022)

(cleaned up).  Relevant here, a grievance procedure is unavailable "when

(despite what regulations or guidance materials may promise) it operates

as a simple dead end—with officers unable or consistently unwilling to

provide any relief" and "when prison administrators thwart inmates from

taking advantage of a grievance process through machination,

misrepresentation, or intimidation."  *Id.* (cleaned up).  "[I]f the plaintiff

contends that he was prevented from exhausting his remedies," the burden

is on the defendants to "present evidence showing that the plaintiff's ability

to exhaust was not hindered."  *Id.* at 295.

Neal has not shown that he made "affirmative efforts" to comply with

the grievance process.  He contends that filing grievances against Nenrod

would have been futile because she regularly denied or rejected his

11

grievances.  ECF No. 35, PageID.498-499; ECF No. 36, PageID.525-527.

But Neal's subjective belief that any grievance against Nenrod would have

been rejected does not exempt him from the exhaustion requirement.  *See*

*Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (exhaustion

is required "even if the prisoner subjectively believes the remedy is not

available" or "believe[s] the procedure to be ineffective or futile"); *Moore v.*

*Washington*, 729 F. Supp. 3d 732, 744 (E.D. Mich. 2024) ("[T]he

anticipation of an unfavorable grievance ruling does not relieve a plaintiff of

their obligation to exhaust their claims before commencing an action.").

And PD 03.02.130 states that MDOC staff "who may be involved in

the issue being grieved shall not participate in any capacity in the grievance

investigation, review, or response, except as necessary to provide

information to the respondent."  ECF No. 30-2, PageID.356, ¶ V.  Indeed,

Nenrod did not review MRF-1428 or MRF-1429, as other MDOC officials

signed the responses.  *See* ECF No. 30-4, PageID.396-400, 405-414.

Even if Nenrod regularly denied or rejected Neal's grievances, he has not

shown that this practice would have impacted a grievance filed against her.

Neal also contends that Nenrod manipulated the response deadlines

to give other MDOC officials more time to respond to grievances.  ECF No.

35, PageID.498-499; ECF No. 36, PageID.525-527.  Again, Neal has not

12

shown that Nenrod would have been involved in reviewing grievances filed against her.  *See* ECF No. 30-2, PageID.356, ¶ V.  Even if he had, Nenrod's alleged actions would have only delayed the grievance process. Neal does not explain how any delay would have rendered the grievance process unavailable.  Nor does he explain why this delay should relieve him of his obligation to make "affirmative efforts" to grieve his disputes against Nenrod.

Last, Neal contends that he exhausted his claims against Nenrod in MRF-24-04-0662-27z.  ECF No. 36, PageID.528-529.  MRF-0662 grieved Nenrod's alleged failure to assign an identifying number to a grievance Neal made against Ryan Silverthorne in March 2024.  ECF No. 38-3, PageID.574.  Although the complaint asserts that Neal filed a grievance against Silverthorne in March 2024, it does not allege that Nenrod mishandled that grievance.  ECF No. 1, PageID.12-13.  The grievances underlying Neal's claims against Nenrod were filed in 2022 and 2023.  ECF No. 1, PageID.5-7, 10-11; ECF No. 30, PageID.326.  MRF-0662 did not exhaust any claims advanced against Nenrod in the complaint.

In sum, Neal's sole exhausted claims arise from Nenrod's alleged mishandling of MRF-1383—excluding his retaliation claim.  All unexhausted claims should be dismissed without prejudice.

### *Motion to Dismiss*

### A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a plausible claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations.  *Iqbal*, 556 U.S. at 678.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings,

14

*Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007). Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

**B.**

Neal claims that Nenrod violated his First, Eighth, and Fourteenth Amendment rights by mishandling MRF-1383. ECF No. 1, PageID.9-10. In his sur-reply, Neal "concede[s] that there is no Eighth Amendment claims against GC Nenrod." ECF No. 36, PageID.532. Neal's Eighth Amendment claim against Nenrod is thus withdrawn. The Court evaluates the merits of Neal's First and Fourteenth Amendment claims arising from Nenrod's alleged mishandling of MRF-1383.

**1.**

Neal asserts that Nenrod violated his First Amendment right to petition the government for redress of his grievance. ECF No. 1, PageID.6, 14. Inmates "have a constitutional right of access to the courts, which is partially grounded in 'the right of the people…to petition the Government for

15

a redress of grievances.'" *Hill v. Dailey*, 557 F.3d 437, 438 (6th Cir. 2009)

(quoting U.S. Const. amend. I).

> The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression.  The First Amendment protects [the plaintiff's] right to petition, but his suit is founded completely on a mistaken reading of that Amendment.  A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (cleaned up).

The First Amendment guarantees prisoners' "right to file grievances against prison officials without retaliation, but the amendment does not require the government to offer any particular process or to consider, respond to, or grant relief on that grievance."  *Howell v. Mayhew*, No. 1:21-cv-69, 2021 WL 2820666, at *6 (W.D. Mich. July 7, 2021) (cleaned up); *Perry v. Knapp*, No. 1:20-cv-694, 2020 WL 5249076, at *7 (W.D. Mich. Sept. 3, 2020) (cleaned up).  Courts have rejected First Amendment claims like Neal's alleging that prison officials interfered with grievance processing.  Such claims seek to "expand [the inmate's] right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures."  *Howell*, 2021 WL 2820666, at *6; *Perry*, 2020 WL 5249076, at *7.

16

Another court rejected a prisoner's First Amendment claim that grievance coordinators tampered with her grievances by changing identifier numbers and the date on her request for an appeal form. *Dyer v. Osterhout*, No. 15-cv-12867, 2018 WL 5094074, at *4 (E.D. Mich. May 8, 2018), *adopted*, 2018 WL 4576674 (E.D. Mich. Sept. 25, 2018). Noting that a prisoner's right to petition is not absolute, the court concluded that "the alleged mishandling of the plaintiff's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim" because "prison grievance procedures are not mandated by the First Amendment" and are not interests protected by the Due Process Clause. *Id.* (quoting *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011)) (cleaned up).

Neal has also failed to plausibly allege that Nenrod's interference with his grievance prevented him from accessing the courts. Even if Nenrod's alleged mishandling of his grievance had prevented Neal from exhausting his administrative remedies, his right to access the courts would not have been compromised if the grievance process was unavailable. *See Howell*, 2021 WL 2820666, at *6. But as discussed above, Neal has not alleged how changing the response deadline prevented him from exhausting the grievance.

17

Neal's First Amendment claim therefore lacks merit and should be dismissed.

**2.**

Neal also asserts that Nenrod violated the Fourteenth Amendment by mishandling his grievance, but he fails to specify whether his claim arises under the due process clause or the equal protection clause.  ECF No. 1, PageID.9-10.  Even so, Neal fails to state a claim under either legal theory.

"A claim challenging the adequacy of grievance procedures is properly analyzed under the rubric of the *procedural* due process protections of the Fourteenth Amendment," not under the standard for substantive due process.  *Butler v. Scholten*, No. 1:19-cv-449, 2019 WL 4126470, at *3-4 (W.D. Mich. Aug. 30, 2019).  To state a procedural due process claim, a plaintiff must allege facts showing that: (1) he had a life, liberty, or property interest protected by the due process clause; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights before the deprivation.  *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

Michigan inmates do not have a due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("[T]here is no constitutionally protected due

18

process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."). Nor does state law create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, 19 F.3d 1435 (Table) (6th Cir. 1994). An inmate's claim of policy or procedural violations during the grievance process thus fails to state a claim. *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (affirming dismissal of a due process claim that a prison official failed to properly investigate a grievance); *Howell*, 2021 WL 2820666, at *5 (claim that prison officials interfered with grievances failed to state a valid due process claim). Neal thus fails to state a due process claim.

"The hallmark of the Equal Protection Clause is that 'all persons similarly situated should be treated alike.'" *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 976 (E.D. Mich. 2016) (quoting *City of Cleburne v. City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To state an equal protection claim, a plaintiff must allege facts showing that the defendants treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v.*

19

*Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  The plaintiff must also allege facts allowing an inference of discriminatory intent or purpose.  *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003).

Neal does not allege that he was treated differently than any other inmate or that Nenrod acted with discriminatory intent.  The complaint asserts no factual basis supporting an equal protection claim.  Any such claim should thus be dismissed.

## IV.   Conclusion

The Court **RECOMMENDS** that Nenrod's motion to dismiss or for summary judgment be **GRANTED** (ECF No. 30).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 8, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal

20

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 8, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager

21